UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN MENCIA-MONTES,<br><br>Plaintiff,<br><br>v.<br><br>FIT FOODS DISTRIBUTION, INC.,<br><br>Defendant. | Case No. 24-cv-01768-EKL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

This false advertising action arises out of Plaintiff's purchase of Defendant's protein supplement, "Mutant Mass Extreme 2500 Muscle Mass Gainer" (the "Product"). Plaintiff alleges that the Product's label deceptively overstates its protein content and that, had Plaintiff known the Product's true protein content, he would not have purchased it or would have paid less. Before the Court is Defendant's motion to dismiss. Mot. to Dismiss, ECF No. 15. The Court carefully reviewed the parties' briefs and heard argument on December 18, 2024. For the following reasons, Defendant's motion to dismiss is GRANTED in part as to Plaintiff's CLRA claim and request for injunctive relief, and DENIED in part as to Plaintiff's claims under the FAL and UCL.

I.  **BACKGROUND**

Defendant Fit Foods Distribution, Inc. ("Defendant") formulates, manufactures, advertises, and sells a range of supplements, including the Product at issue here. Compl. ¶ 1, ECF No. 1.[1] The Product is sold to consumers (or, as the Product package states, to "EXTREME HARD GAINERS") in California and throughout the United States, both online and through third-party

---

[1] The facts are taken from the complaint and assumed to be true for purposes of this motion. Additional facts are discussed below where relevant to the Court's ruling.

retail stores. *Id.* ¶ 7. The Product is sold in black bags that contain red and yellow design elements touting the features and benefits of the Product – *e.g.*, "GOURMET TASTE" and "EASY MIXING."[2] Relevant here, one of the claims on the front of the package states "92G PROTEIN†††" (the "Statement"). "92G" appears in large, bold font and "PROTEIN†††" appears directly beneath "92G" in significantly smaller font. The triple-dagger symbol[3] next to the Statement refers to a disclaimer on the bottom right-hand corner of the package that reads "†††Per 2 servings when taken as directed with milk." *Id.* ¶ 9. The disclaimer in the bottom right-hand corner is in even smaller font than the "PROTEIN†††" text. *Id.*



---

[2] Defendant asks the Court to incorporate two images of the Product package by reference in the complaint on the ground that "the Product's labeling forms the basis for all of Plaintiff's claims, the Complaint references the labeling extensively, and the Complaint even includes images of the Product's front and rear label." Mot. at 8; *see also* Decl. of Jim McMahon ("McMahon Decl.") Exs. A, B, ECF No. 15-1. Both Exhibit A and B appear to be high-resolution "flat" proofs of the Product label included in the complaint, although Exhibit B appears to be a different flavor and with more servings. Compl. ¶¶ 9, 11; McMahon Decl. Exs. A, B. The Court agrees that the images are incorporated in the complaint, and GRANTS the request. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003))).

[3] The Court refers to the "†††" symbol on the front of the Product's packaging as a "triple-dagger" for purposes of this Order.

2

1    The back of the Product package displays the Nutrition Facts in three columns. The first
2 column, "Per 1 serving with water," reflects 30 grams of protein; the second column, "Per 2
3 servings with water," reflects 60 grams of protein; and the third column, "Per 2 servings with 1%
4 milk (31.8 fl. oz total)," reflects 92 grams of protein. *Id.* ¶ 10.



Plaintiff Ruben Mencia-Montes ("Plaintiff") alleges that he purchased the Product for personal use from Muscle & Strength's online store for approximately $79.99 on or about October 2023. *Id.* ¶ 5. Plaintiff further alleges that he read and relied on the front-label representation that the Product contains "92g[rams] PROTEIN." *Id.* ¶ 5. According to the complaint, Plaintiff "did not see any statement alerting him to the fact that he would need to purchase and add 'milk' to obtain the Product's protein representations." *Id.* ¶ 6. Plaintiff further alleges that "had he known that the Product's protein representations were contingent on adding 'milk' he would not have relied on them or believed those representations were comparable to other protein supplements on the market." *Id.* ¶ 6. Thus, Plaintiff asserts that he "would not have purchased the Product or

3

would have paid less for it" absent the Product's deceptive protein content representation. *Id.* ¶¶ 6-7. Plaintiff seeks to represent a class of "all persons in California who purchased Defendant's Product." *Id.* ¶ 22.

Plaintiff alleges that the statements on Defendant's Product are false and misleading, and brings three claims under California law: (1) violation of California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500 (Count 1); (2) violation of California's Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1750 (Count 2); and (3) violation of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 (Count 3). Compl. ¶¶ 31-55. Plaintiff seeks injunctive relief as to all counts (Compl ¶¶ 37, 47, 54), and equitable relief in the form of restitution and attorney's fees as to Count 1 and Count 3. Compl. ¶¶ 37, 54. Defendant moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and moves to dismiss Plaintiff's injunctive relief claims under Rule 12(b)(1) for lack of Article III standing. Mot. to Dismiss, ECF No. 15.

## II.     LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that

4

1   the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

2   F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th

3   Cir. 1995)).

4         Plaintiff must demonstrate Article III standing for each claim and for each form of relief

5   sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). As to Defendant's motion

6   under Rule 12(b)(1) for lack of standing to seek injunctive relief, Plaintiff must demonstrate that

7   he faces "a substantial risk of future injury." *Murthy v. Missouri*, 603 U.S. 43, 68 (2024).

## III. DISCUSSION

Plaintiff brings claims under the FAL, the CLRA, and the UCL.[4] The FAL prohibits false or misleading advertising, and the UCL prohibits business practices that are unlawful, fraudulent, or unfair. *See* Cal. Bus. & Prof. Code §§ 17500, 17200. Because the same standard for fraudulent activity governs claims under both the FAL and the fraudulent prong of the UCL,[5] the Court first addresses Plaintiff's claims under the FAL and the fraudulent prong of the UCL. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (noting that courts often analyze these statutes together). The Court then addresses Plaintiff's UCL claim. Finally, the Court determines whether Plaintiff has standing to pursue injunctive relief, and whether Plaintiff adequately pleads his claim for equitable restitution.

---

[4] For the reasons discussed in Section III.C, the Court dismisses Plaintiff's CLRA claim for lack of Article III standing to pursue injunctive relief.

[5] Federal Rule of Civil Procedure 9(b) requires a party alleging fraud or misrepresentation to "state with particularity the circumstances constituting fraud or mistake." To meet this heightened pleading standard, plaintiffs must allege the "'who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Defendant does not challenge the complaint on this basis.

### A. False and Misleading Advertising

Plaintiff's claims of false and misleading advertising, asserted under the FAL and the UCL, are governed by the "reasonable consumer" standard, which "requires a plaintiff to 'show that members of the public are likely to be deceived' by the defendant's marketing claims." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *see also* Mot. at 8. The Supreme Court of California has explained that these statutes are intended to permit courts "to reach any novel or creative scheme of false or misleading advertising that a deceptive business may devise." *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279, 308-09 (2020). At the motion to dismiss stage, dismissal is only "appropriate when 'the advertisement itself [makes] it *impossible* for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Whiteside*, 108 F.4th at 778 (citation omitted) (emphasis added). Thus, except in "rare" circumstances, the question of "whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Id.* (quoting *Williams*, 552 F.3d at 938-39).

Here, Plaintiff plausibly alleges that reasonable consumers are likely to be deceived by Defendant's label. Plaintiff argues that the "92G PROTEIN" representation conveys to a reasonable consumer that the Product *itself* contains 92 grams of protein per serving, when instead the Product contains only 30 grams of protein per serving. Opp. at 2, 12. This type of statement is likely to deceive a reasonable consumer because it represents a seemingly concrete detail about the Product's nutritional content. *See Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) (explaining that plaintiff plausibly alleged a fraudulent misrepresentation claim where Plaintiff was required to look "elsewhere on the package" to learn that the front label's representation of 1,000 mg calcium could only be achieved by consuming two units of the product); *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 903 (N.D. Cal. 2021) (concluding that reasonable consumers could be misled by a front-label claim that vitamin C gummies had "750 mg of Vitamin C" despite having to consume three gummies to attain that amount); *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1169 (2018) (holding that a reasonable consumer could plausibly be misled by a vitamin product called 'One-A-Day' that clarified on the back label that the serving

6

1  size was actually two-a-day).  Furthermore, courts in this District have concluded that front-label
2  protein representations were plausibly misleading where the amount of protein represented could
3  only be reached with the addition of milk.  *See Nacarino v. KSF Acquisition Corp.,* 642 F. Supp.
4  3d 1074, 1085 (N.D. Cal. 2022) (finding that a front label protein content claim was materially
5  misleading because it required the addition of milk); *Mee v. I A Nutrition, Inc.*, No. C-14-5006-
6  MMC, 2015 WL 4776301, at *6 (N.D. Cal. Aug. 13, 2015) (finding front-label claim that product
7  contained "66g Protein" was plausibly misleading when in fact that value could only be reached
8  by adding milk).

9  Defendant argues that the front label Statement is ambiguous because of the triple-dagger
10 mark next to the Statement, and thus Plaintiff should have been on notice to look for more
11 information explaining the Product's protein content.  But whether the reference mark and
12 accompanying disclaimer is sufficient to put a reasonable consumer on notice is generally a
13 question of fact that cannot be resolved against Plaintiff at the pleading stage.  *See Anthony v.*
14 *Pharmavite*, No. 18-cv-02636-EMC, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4, 2019) ("[T]he
15 sufficiency of the asterisk flagging the disclaimer is at least a question of fact."); *Madenlian v.*
16 *Flax USA Inc.*, No. 13-01748 JVS, 2014 WL 7723578, at *3 n.3 (C.D. Cal. Mar. 31, 2014)
17 (similar); *Gatling-Lee v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2023 WL 11113888, at
18 *10 (N.D. Cal. Mar. 28, 2023) (collecting citations); *see also KSF Acquisition*, 642 F. Supp. 3d at
19 1085 (comparing font size of disclosure to other relevant data).

20 As Plaintiff argues, it is plausible that both the triple-dagger reference mark and the
21 disclaimer fail to put reasonable consumers on notice that the Statement comes with qualifications.
22 First, Plaintiff alleges the reference mark is "barely legible, insufficiently offset by the much larger
23 and prominent text that surrounds [it], and [is] lost within the various other symbols contained
24 elsewhere on the Product's label."  Opp. at 4; *see also* Compl. ¶ 14.  Second, the triple-dagger
25 symbol adjacent to the Product's protein representation is not "an 'asterisk' but, rather a less
26 familiar symbol, which evidently lacks a name in common parlance, and, at best, leads the
27 consumer to a partial disclosure."  *KSF Acquisition*, 642 F. Supp. 3d at 1085; *see also* Opp. at 7.
28 Third, Plaintiff contends that the purported disclaimer itself is "buried on the bottom of the label,

in small print and among other fine print language, and is completely separated from the at-issue '92G Protein' claim such that it can easily be missed by a reasonable consumer." Opp. at 5; *see also* Compl. ¶ 14. The credibility of each of these allegations is a question of fact not appropriately determined at the pleading stage. *Brown*, 2022 WL 717816, at *7 ("Of course, how prominently the disclaimers are displayed is a question of fact.").

In addition, the disclaimer itself is plausibly misleading and does not conform to existing categories that have been addressed by the case law. For example, the disclaimer requires a consumer to *both* double the serving size *and* add ingredients to reach the represented protein content. Thus, for a consumer to discern what is required to reach the conspicuously placed representation of "92G[rams] protein," the consumer must follow a trail of "crumbs" located throughout the label: (1) notice the triple-dagger reference mark beneath the "92G" representation in significantly smaller font; (2) follow the mark to the bottom of the Product's front label; (3) identify the *relevant* disclaimer, since there are at least two "dagger" disclaimers on the front label relating to "protein"; and (4) consult the back label to determine how much of the product would constitute two servings (8 scoops) and determine how much additional milk would be required (31.8 fluid oz). Under these circumstances, the Court cannot conclude that the Product label makes "it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Whiteside*, 108 F.4th at 778 (citation omitted).

Finally, Defendant argues that the front label disclaimer precludes Plaintiff, as a matter of law, from establishing that reasonable consumers are likely to be misled. Reply at 5. As support, Defendant relies on the Ninth Circuit's ruling in *Whiteside*. That case considered whether 'Huggies Natural Care® Baby Wipes' were deceptively marketed. *Whiteside*, 108 F.4th at 774. Plaintiff alleged that "the words 'plant-based wipes' (or 'plant-based ingredients') and 'natural care®' on the front label, together with the nature-themed imagery displayed on the packaging, suggest that the baby wipes contain only 'water, natural ingredients, and ingredients that come from plants and that are not subject to chemical modification or processing.'" *Id.*

As relevant here, the Ninth Circuit conducted a fact-based analysis to determine whether the term "plant-based" accompanied by an asterisk and the qualifying statement "70+% by

8

weight" directly beneath the challenged statement was likely to mislead consumers. Ultimately, the Ninth Circuit concluded that, based on *the particularities of the products at issue*, the asterisked statements were "unmistakably clear on the front [label] that they are 70% plant-based by weight." *Whiteside*, 108 F.4th at 785. The Ninth Circuit did not hold that the mere presence of an asterisk and qualifying statement shields defendants from all liability related to misleading or deceptive statements. Rather, *Whiteside* reaffirmed that whether reasonable consumers are likely to be deceived is a fact-intensive inquiry not appropriate at the dismissal stage. *Id.* at 778.

Because Plaintiff has plausibly alleged that reasonable consumers are likely to be deceived, the Court denies Defendant's motion to dismiss for failure to state a claim under the FAL and the fraudulent prong of the UCL.

### B. UCL Claim

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff alleges that the Product label violates all three prongs of the UCL. Each prong of the UCL (*i.e.* fraudulent, unlawful, and unfair) creates a distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Thus, if Plaintiff plausibly alleges a claim under *any* prong of the UCL, Defendant's motion to dismiss must be denied.

#### 1. Fraudulent prong

Where a plaintiff has plausibly alleged a violation of the FAL, the plaintiff has also alleged a violation of the fraudulent prong of the UCL. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (noting that "the same standard for fraudulent activity" governs "the FAL, the CLRA, and the fraudulent prong of the UCL"). As discussed in Section III.A, the Court finds that Plaintiff has plausibly alleged a violation of the FAL. Accordingly, Plaintiff has likewise alleged a violation of the fraudulent prong of the UCL.

#### 2. Unlawful prong

Plaintiff's theory of liability under the unlawful prong is predicated on Defendant's violation of both the FAL and the California Sherman Food, Drug, and Cosmetic Law ("California Sherman Law"), Cal. Health & Safety Code § 109875. Compl. ¶ 51. To state a claim under the

unlawful prong of the UCL, "a plaintiff 'must identify the particular section of the statute that was violated' and 'plead with particularity how the facts of this case pertain to that specific statute.'" *Hodges v. Apple Inc.*, No. 13-CV-01128-WHO, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013) (quoting *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010)).

As with the fraudulent prong, where a plaintiff has plausibly alleged a claim under the FAL, the plaintiff has sufficiently alleged a violation of the unlawful prong of the UCL. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002), *as modified* (May 22, 2002) ("Because the Plaintiff has sufficiently pled a violation of the FAL . . . Plaintiff also has a valid claim under the unlawful prong of the UCL."). Thus, Plaintiff has sufficiently pled a valid claim under the unlawful prong based on this theory.

Turning to the California Sherman Law, Plaintiff has failed to identify the specific section(s) that were violated by Defendant's conduct. At the hearing, Plaintiff conceded that this was insufficient and requested leave to amend the complaint to specify his allegations predicated on a violation of the California Sherman Law. The Court grants leave to amend for this purpose.

### 3. Unfair prong

Plaintiff alleges that Defendant has violated the UCL's proscription against unfair business practices. Compl. ¶ 52. The determination of "whether a practice is 'unfair' 'is [most often] a question of fact, which involves an equitable weighing of all the circumstances, a process which usually precludes the court from sustaining a demurrer' at the pleading stage." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1271 (2006). The Ninth Circuit has held that "to support a finding of unfairness to *consumers*, a court uses the balancing test, which 'weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'"[6] *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023).

---

[6] "The UCL does not define the term 'unfair' . . . [and] the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023-24 (N.D. Cal. 2019) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)). In *Nationwide Biweekly,* the California Supreme Court did not resolve the split of authority as to which test for unfairness was appropriate in the context of UCL claims brought by consumers. 9 Cal. 5th at 303-04.

Here, Defendant argues that Plaintiff's theory of liability under the "unfair" prong rises and falls based on Plaintiff's allegation that the Product label is deceptive or misleading. Mot. at 14 n.4 ("As the UCL 'unfair' claim is based on the same theory as the 'fraudulent' claim, it fails for the same reason."); *see also* Reply at 8. Defendant does not address how the Court should evaluate Plaintiff's claim under the "unfair" prong if, as here, the Court finds that Plaintiff has plausibly alleged that the Product label is deceptive or misleading. Plaintiff, however, alleges that Defendant's conduct "is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct." Compl. ¶ 52. Defendant does not argue that its Product label offers some utility that might outweigh the alleged harm to Plaintiff. In light of the Court's finding that Plaintiff has plausibly alleged that the Product label is likely to deceive reasonable consumers, the Court finds that Plaintiff, at minimum, has plausibly alleged a violation of the "unfair" prong under the balancing test. *See Epic Games*, 67 F.4th at 1000.

### C. Injunctive Relief

Plaintiff seeks injunctive relief under the FAL, the CLRA, and the UCL. Plaintiff must establish Article III standing to pursue injunctive relief by demonstrating that he faces "a substantial risk of future injury." *Murthy*, 603 U.S. at 68. At the motion hearing, Plaintiff conceded that he lacks standing to pursue injunctive relief. Thus, the Court grants Defendant's motion to dismiss claims for injunctive relief under the FAL, the CLRA, and the UCL. Because injunctive relief is the only remedy Plaintiff seeks under the CLRA, the Court grants Defendant's motion to dismiss the CLRA claim (Count 2) in its entirety. *See* Compl. ¶ 47 ("Plaintiff and the Class Members presently seek only injunctive relief under [the CLRA].").[7]

---

[7] Because there has been no prior amendment to the complaint, the Court dismisses the claim for injunctive relief and the CLRA with leave to amend. Plaintiff is cautioned to only do so if he can demonstrate a "likelihood [he] will be deceived in the future" by Defendant's Product label. *Jackson v. Gen. Mills, Inc.*, No. 18CV2634-LAB (BGS), 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020) (explaining that "where a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff").

**D.     Equitable Relief**

Plaintiff seeks equitable restitution pursuant to the FAL and UCL.  Compl. ¶¶ 37, 54.  Defendant argues that Plaintiff's claims for equitable restitution must be dismissed for failure "to plead facts establishing that available legal remedies are inadequate."  However, Plaintiff alleges that he lacks an adequate legal remedy because legal remedies are "not equally prompt and certain and in other ways efficient as equitable relief."  Compl. ¶¶ 38, 55.  Plaintiff further alleges that "damages and restitution are not the same amount."  *Id.*  These allegations are sufficient at the pleading stage.  *See, e.g.*, *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023) (holding that the plaintiffs' allegation that they had no adequate legal remedy and that equitable remedies were more certain to provide relief than legal remedies was sufficient); *see also Valiente v. Simpson Imps., Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024) (same); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) (holding that it is sufficient to allege that restitution "would be more certain, prompt, or efficient than the legal remedies they request.").

Although Defendant argues that more is required, the legal authority cited in the papers does not support this assertion.  Mot. at 12.  Defendant cites *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), but *Sonner* is both procedurally and factually distinguishable.  In *Sonner*, the plaintiff did not allege that she lacked an adequate legal remedy – to the contrary, she asserted identical claims for damages and restitution, each for $32 million.  *Sonner*, 971 F.3d at 844.  After more than four years of litigation, on the "eve of trial," plaintiff voluntarily dismissed her claim for damages in order to "request that the district court judge award the class $32,000,000 as restitution, rather than having to persuade a jury to award this amount as damages."  *Id*. at 838.  Thus, "*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action."  *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 895 (N.D. Cal. 2022).

*Sonner*'s holding was not expressly limited to the circumstances where a plaintiff voluntarily dismisses a damages claim to avoid a jury trial.  *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022).  Nonetheless, courts have generally concluded that *Sonner* has minimal application at the pleading stage.  *Murphy*, 651 F. Supp. 3d at 1129; *see also Johnson v.*

12

*Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("[I]f a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case."); *Chobani*, 668 F. Supp. 3d at 897 (denying motion to dismiss plaintiff's claim for restitution).

Defendant also cites to *Duttweiler v. Triumph Motorcycles (America) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780 (N.D. Cal. 2015), for the proposition that "in order to demonstrate some entitlement to equitable relief, [Plaintiff] was required to allege facts suggesting that damages under the CLRA alone would not provide adequate relief." *Id.* at *8. For the reasons discussed in Section III.A, the Court concludes that Plaintiff *has* plausibly alleged that he lacks an adequate legal remedy under the CLRA. Furthermore, *Duttweiler* does not require a heightened level of specificity, as Defendant suggests. The issue in *Duttweiler* was that the plaintiff did not plead an inadequate legal remedy at all. *Id.*

Accordingly, the Court concludes that plaintiff has plausibly alleged that he lacks an adequate remedy at law.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant's motion to dismiss as to Count 1 (FAL) is GRANTED as to injunctive relief and DENIED as to equitable relief.
2. Defendant's motion to dismiss as to Count 2 (CLRA) is GRANTED with leave to amend.
3. Defendant's motion to dismiss as to Count 3 (UCL) is GRANTED IN PART and DENIED IN PART, with leave to amend as to claims predicated on particular section(s) of the California Sherman Law.

In addition, as discussed at the motion hearing, Plaintiff's complaint contains inconsistencies as to the amount of milk specified on the Product label and as to the location of the disclaimer. Accordingly, Plaintiff may file an amended complaint within 21 days of this Order.

---

[8] Plaintiff also correctly argues that he may seek equitable relief in the alternative. *See Chobani*, 668 F. Supp. 3d at 896 (quoting Fed. R. Civ. P. 8(a)(3)); *Murphy*, 651 F. Supp. 3d at 1129.

Plaintiff has one final opportunity to correct the factual basis for his claims, to plausibly allege Article III standing for injunctive relief, and to plead the specific section(s) of the California Sherman Act on which Plaintiff predicates his unlawful UCL claim.

**IT IS SO ORDERED.**

Dated: March 31, 2025

_____
Eumi K. Lee
United States District Judge